IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JOHN BRYON KRUEGER, :
    Petitioner : 1:09-CV-1116
v. :
WARDEN JERRY MARTINEZ, : Hon. Sylvia H. Rambo
    Respondent :

**M E M O R A N D U M**

Before the court is: (1) Petitioner John Bryon Krueger's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241, (Doc. 1), challenging the Bureau of Prisons' ("BOP") decision to place him in a residential reentry center ("RRC") for only five to six months prior to his release date, instead of the statutorily permitted twelve months provided for by the Second Chance Act of 2007, as codified in 18 U.S.C. § 3624(c); and (2) Petitioner's motion for limited, expedited discovery from Respondent, (Doc. 12). The parties have fully briefed these matters, and they are ripe for disposition.

**I.**      **Background**

    **A.**      **Facts**

Petitioner is currently incarcerated at the Low Security Correctional Institution at Allenwood, Pennsylvania, serving a sentence of 80 months imposed on November 1, 2002 by the United States District Court for the Southern District of California. (Doc. 2 at 2.) Krueger pled guilty to and was convicted of conspiracy to kidnap a person in a foreign country in violation of 18 U.S.C. § 956(A)(a), and

conspiracy to introduce unapproved medical devices into interstate commerce in violation of 18 U.S.C. § 371. (Doc. 11-2, Decl. of Lisa Manthey ¶ 2.) Krueger has been in the custody of the BOP since April 4, 2000. (*Id.* at ¶ 3.) His projected release date, counting good conduct time credit, is September 17, 2010. (*Id.*)

Under the Second Chance Act, approximately 17-19 months before each inmate's probable release date, a unit team for each inmate meets to assess the length of time that the inmate will spend in a RRC prior to his release from custody. On February 20, 2009, Krueger's unit team convened for a review and recommended that Krueger spend the final 150-180 days in a RRC placement. According to Respondents, this recommendation was:

> [B]ased on his current offense; available resources within the release district, noting that he has secured residency with his mother; financial planning, noting that he is not in destitution; employment options/academic history, noting that he has secured a job and has obtained a college degree; and his health, noting that he is in good health.

(Doc. 11-2, Decl. of Lisa Manthey ¶ 6; Doc. 11-2, Attach. 4, Program Review dated July 9, 2009.) Krueger attempted, through the administrative processes, to have Respondent consider a longer RRC placement, but he was unsuccessful.[1]

### B. Statutory Background

Congress has delegated inmate placement authority to the BOP in two statutes: 18 U.S.C. §§ 3621(b) and 3624(c). Under § 3621(b), the BOP is delegated broad discretionary authority to determine the proper placement of inmates at the

---

[1] Petitioner asserts that he has exhausted his administrative remedies. Respondent does not challenge this assertion, and the court finds, based on the information before it, that Petitioner has in fact exhausted all administrative procedures.

start of an inmate's prison term. Placement designations require consideration of five statutory factors:

> (1) the resources of the facility contemplated;
> (2) the nature and circumstances of the offense;
> (3) the history and characteristics of the prisoner;
> (4) any statement by the court that imposed the sentence-
>   (A) concerning the purpose for which the sentence to imprisonment was determined to be warranted; or
>   (B) recommending a type of penal or correctional facility as appropriate; and
> (5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28.

18 U.S.C. § 3621(b). When considering the transfer of an inmate during the course of his imprisonment, the BOP must consider these same five factors. 18 U.S.C. § 3621(b); *Woodall v. Federal Bureau of Prisons,* 432 F.3d 235, 247 (3d Cir. 2005).

Under § 3624(c), the BOP is required to evaluate an inmate for RRC placement near the end of an inmate's sentence. The Second Chance Act amended § 3624(c) by, among other things, increasing an inmate's RRC eligibility from six to twelve months. The statute now provides, in relevant part:

> (1) In general.-The Director of the Bureau of Prisons shall, to the extent practicable, ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community. Such conditions may include a community correctional facility.

18 U.S.C. § 3624(c)(1). The Second Chance Act also requires the BOP to issue regulations which ensure that placement in a RRC is: "[1] conducted in a manner consistent with § 3621(b) of this title; [2] determined on an individual basis; and [3] of sufficient duration to provide the greatest likelihood of successful reintegration into the community." *Id.* § 3624(c)(6).

3

Additionally, the Second Chance Act mandated that the BOP create a federal prisoner reentry initiative that, among other things, provides incentives for prisoners to participate in skills development programs. 42 U.S.C. § 17541(a). The authorizing statute for the prisoner reentry initiative states, in relevant part:

> The Attorney General, in coordination with the Director of the Bureau of Prisons, shall, subject to the availability of appropriations, conduct the following activities to establish a Federal prisoner reentry initiative:
>
> (1) The establishment of a Federal prisoner reentry strategy to help prepare prisoners for release and successful reintegration into the community, including, at a minimum, that the Bureau of Prisons –
>
> . . .
>
> (G) provide incentives for prisoner participation in skills development programs.
>
> (2) Incentives for a prisoner who participates in reentry and skills development programs which may, at the discretion of the Director, include –
>
> (A) the maximum allowable period in a community confinement facility.

42 U.S.C. § 17541(a).

### C. **BOP Memoranda, Regulations, and Program Statements.**

The BOP has issued two memoranda addressing RRCs and the Second Chance Act. On April 14, 2008—a few days after the Second Chance Act became law—the BOP issued a guidance memorandum detailing the changes required by the Second Chance Act, including providing an RRC assessment seventeen to nineteen months prior to release, instead of the previous time frame of eleven to thirteen months. (Doc. 11-2 at 7, Apr. 14, 2008 Mem.) The April 14th memorandum also directs staff to conduct individualized assessments using the five factors of § 3621(b). (*Id.* at 8-9.) The memorandum further instructs staff that all inmates are

4

eligible for a maximum of twelve months RRC time, but that placements for longer than six months require approval from the Regional Director. (*Id.* at 10.)

The April 14th memorandum references Program Statement 7310.04, which provides that "[a]n inmate may be referred for up to 180 days, with placement beyond 180 days highly unusual, and only possible with extraordinary justification." (Doc. 11-2 at 24, Program Statement 7310.04) In such circumstances, the warden must obtain approval from the Regional Director. (*Id.*)

On October 21, 2008, the BOP published in the Federal Register proposed regulations, adopted to conform to the requirements of the Second Chance Act. *See* 73 Fed. Reg. 62,440, 62,441 (Oct. 21, 2008). These proposed regulations amend 28 C.F.R. §§ 570.20-570.22. Only sections 570.21 and 570.22 are relevant here. Those sections, as amended, would read:

> **570.21 Time-frames.**
>
> (a) Community confinement. Inmates may be designated to community confinement as a condition of pre-release custody and programming during the final months of the inmate's term of imprisonment, not to exceed twelve months.
> (b) Home detention. Inmates may be designated to home detention as a condition of pre-release custody and programming during the final months of the inmates term of imprisonment, not to exceed the shorter of ten percent of the inmates term of imprisonment or six months.
> (c) Exceeding the time-frames. These time-frames may be exceeded when separate statutory authority allows greater periods of community confinement as a condition of pre-release custody.
>
> **Sec. 570.22 Designation.**
>
> Inmates will be considered for pre-release community confinement in a manner consistent with 18 U.S.C. section 3621(b), determined on an individual basis, and of sufficient duration to provide the greatest likelihood of

> successful reintegration into the community, within the time-frames set forth in this part.

73 Fed. Reg. 62,440, 62,441 (Oct. 21, 2008).

On November 14, 2008, the BOP issued another guidance memorandum, which pertains to inmate requests for transfers to RRCs when they have more than twelve months remaining on their sentences.[2] (Doc. 17, Pet'r's Ex. U, Nov. 14, 2008 Mem.) Similar to the April 14th memorandum, the November 14th memorandum requires "unusual or extraordinary circumstances justifying" placement in an RRC beyond six months, and then only with approval from the Regional Director for RRC placements. (*Id.* at 5.)

## II. Discussion

On June 12, 2009, Petitioner filed his petition for writ of habeas corpus seeking an order requiring that he be placed in a RRC effective September 17, 2009 or, in the alternative, remanding his case for reconsideration by the BOP for a full 12-month RRC placement without considering the limitations imposed by the April 14, 2008 and November 14, 2008 memoranda. Specifically, Krueger contends that Respondent based its decision to place him in a RRC for only five to six months on the presumptions outlined in those memoranda that placement should be no longer than six months, rather than an individualized determination concerning what would be a sufficient duration to provide the greatest likelihood of his successful reintegration into the community. Krueger also contents that Respondent violated section 231 of the Second Chance Act, 42 U.S.C. § 17541, by refusing to

---

[2] Even though the November 14, 2008 memorandum, on its face, applies only to inmates who request RRC placements prior to the last 12 months of their incarceration it is relevant to these proceedings because it contains similar language to the April 14, 2008 memorandum and is thus illustrative of the formal BOP guidance on the duration of RRC placements.

recommend him for the full 12-month RRC placement as an incentive award for his extensive participation in skills development programs while incarcerated. The court will address each of these in turn.

### A. The court has jurisdiction over these claims

Krueger seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2241. Section 2241 "confers jurisdiction on district courts to issue writs of habeas corpus in response to a petition from a state or federal prisoner who 'is in custody in violation of the Constitution or laws or treaties of the United States.'" *Coady v. Vaughn*, 251 F.3d 480, 484 (3d Cir. 2001). The federal habeas statute also requires that the petitioner be in custody "under the conviction or sentence under attack at the time his petition is filed." *Lee v. Stickman*, 357 F.3d 338, 342 (3d Cir. 2004) (quoting *Maleng v. Cook*, 490 U.S. 488, 490-91(1989)). Section 2241, unlike other federal habeas statutes, "confers habeas jurisdiction to hear the petition of a federal prisoner who is challenging not the validity but the execution of his sentence." *Coady*, 251 F.3d at 485 (quoting 28 U.S.C. §§ 2241(a) and (c) (3)). Although the Third Circuit has yet to define clearly the meaning of "execution" in this context, it has cited approvingly to holdings from other circuits finding that a § 2241 motion properly challenges "'such matters as the administration of parole, computation of a prisoner's sentence by prison officials, prison disciplinary actions, prison transfers, type of detention and prison conditions.'" *Woodall v. Federal Bureau of Prisons,* 432 F.3d 235, 242 (3d Cir. 2005) (quoting *Jimian v. Nash*, 245 F.3d 144, 147 (2d Cir. 2001)). The Third Circuit has also found § 2241 to be the appropriate means for challenging a decision to exclude an inmate from release to an RRC. *See*

7

*Woodall*, 432 F.3d at 243-44. Accordingly, the court finds that Petitioner's request pursuant to § 2241 was properly made.

### B. RCC Placement pursuant to 18 U.S.C. § 3624(c)

Krueger argues that rather than applying the plain language of the Second Chance Act, Respondent relied on the policy guidance contained in the BOP's April and November memoranda in reaching its decision on the length of his RRC placement. Specifically, Krueger argues that these memoranda effectively imposed a six-month upper limit on the duration of RRC placement. Petitioner argues:

> By instructing Respondent that pre-release placement needs can usually be accommodated by a placement of six (6) months or less, and by denying Respondent the discretion to recommend a placement longer than six (6) months (without advance written approval from the Regional director), the April 14, 2008 and November 14, 2008 memoranda deny Krueger an individualized determination of his [RRC] placement, contrary to the Second Chance Act's amendments to Section 3624(c).

(Doc. 2 at 16.) Respondent contends that Krueger has had the individualized determination he is entitled to under the Second Chance Act, and that he is simply unhappy with the fact that the unit team responsible for his review determined he would benefit from a 5-6 month RRC placement rather than a longer placement. Respondent also argues that neither the April 14th nor the November 14th memoranda impermissibly constrains BOP discretion because these memoranda permit placement for up to 12 months with Regional Director approval.

At first blush Respondent's reasoning is tempting. Nothing restricts the BOP from conferring discretion to various persons within the hierarchy of the institution. However, the Second Chance Act unequivocally requires that the BOP

8

make an individualized determination of an inmate's needs in reaching its conclusion concerning the duration of a RRC placement. *See* 18 U.S.C. § 3624(c). According to the April and November memoranda, a BOP unit team is the one charged with making this recommendation, however, this team's discretion is limited to recommending a placement of no more than six months; anything more than that can only be recommended with the consent of the Regional Director. While it may literally be true that nothing in the April 14th or November 14th memoranda constrains the BOP's discretion, institutional inertia is a powerful force; by instructing staff that pre-release placement needs can usually be accommodated by a placement of six months or less, the BOP has functionally placed a lid on the discretion that it wants its staff to exercise. In other words, while staff have absolute discretion to recommend RRC placement for 0-6 months, if they want to recommend a placement of a longer duration they must be able to demonstrate "unusual or extraordinary circumstances justifying" the recommendation. (*See* Doc.17, Pet'r's Ex. U, Nov. 14, 2008 Mem.) This language effectively chills staff discretion because staff are aware of the institutional preference for a RRC placement of six months or less, a preference that is contrary to the apparent purpose of the Second Chance Act.

        It is clear to this court that by increasing the maximum placement period from six months to twelve months, and requiring the BOP to ensure that placements are long enough to provide "the greatest likelihood of successful reintegration," Congress intended that each inmate be considered for the full twelve month period of RRC placement with the only limitation being the application of the § 3621(b) factors. *See* 18 U.S.C. § 3624(c)(1),(6). The BOP's memoranda add

additional hurdles that find no support in the text of the Second Chance Act. While it may be true that any given prisoner need not be placed in a RRC for longer than six months, it is not universally true that every prisoner will benefit from the same limitations. By depriving the initial decision maker of the ability to recommend placement unfettered by a presumptive six month cap, the BOP significantly reduces the possibility of a truly individualized review that objectively determines the duration required "to provide the greatest likelihood of successful reintegration into the community." 18 U.S.C. § 3624(c)(6)(C). Accordingly, because the duration of Krueger's RRC placement was determined pursuant to these impermissible limitations, the BOP abused its discretion in deciding that Krueger's placement would be for five to six months.

To be clear, the court is not directing the BOP to place Krueger in a RRC for the period of twelve months. Although Krueger asks this court to do so, the court is not in a position to make a judgment about the length of time necessary for the greatest likelihood of Krueger's successful reintegration into the community. This task is best left to the discretion of the BOP. However, by instructing staff that pre-release placement needs can usually be accommodated by a placement of six months or less, and by denying staff the discretion to recommend a placement longer than six months without advance written approval from the Regional Director, the memoranda constrain the discretion necessary to make this determination unfettered by an arbitrary ceiling. It is this ceiling that taints the BOP's decision to place Krueger in a RRC for only five to six months. The court cannot be entirely sure that the BOP made an individualized determination that this was a sufficient length of time for Krueger despite the six-month presumption contained in the memoranda or

because of that presumption. The former is consistent with the BOP's legitimate exercise of discretion, the latter is an abuse of discretion because a presumptive six-month cap finds no support in the text of the Second Chance Act. Accordingly, the court will grant a writ of habeas corpus directing the BOP to reconsider the length of Krueger's RRC placement taking into consideration the requirements of the Second Chance Act and the factors outlined in 18 U.S.C. § 3621(b) and disregarding the limitations imposed by either the April 14, 2008 or November 14, 2008 memoranda.[3]

### C.  RRC Placement pursuant to 42 U.S.C. § 17541

In addition to his argument that the BOP abused its discretion in denying him a full 12-month RRC placement because of its impermissible reliance on a presumptive 6-month limit, Krueger argues that he is entitled to a 12-month placement as an incentive award for his participation in the BOP's skills development program and his educational and religious achievements.

Section 17541 was created as a part of the Second Chance Act, and by its plain language requires the BOP to "provide incentives for prisoner participation in skills development programs." 42 U.S.C. § 17541(a)(1)(G). One such incentive

---

[3]Neither the November 14th nor the April 14, 2008 Memorandum is entitled to *Chevron* deference. *See Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837 (1984). The limitations in the memoranda were not embodied in a regulation or even a Program Statement, and it is settled that BOP Program Statements are not entitled to *Chevron* deference. *See Reno v. Koray*, 515 U.S. 50, 61 (1995) (because they are merely internal agency guidelines that are not "subject to the rigors of the [APA], including public notice and comment," BOP Program Statements receive only "some deference"). Under this standard, "[t]he weight [accorded to an administrative] judgment ... will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control." *U.S. v. Mead Corp.*, 533 U.S. 218, 228 (2001) (*quoting Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944)). Given that the limitations contained in the memoranda find no support in the statutory text, this court declines to defer to the criteria contained in them.

11

may, "at the discretion of the [BOP]" include "the maximum allowable period in a community confinement facility." *Id.* § 17541(a)(2)(A). Krueger argues that the BOP failed to consider this provision when it determined that he was eligible only for a 5-6 month placement rather than a 12-month placement.

For its part, the BOP concedes that it did not separately consider § 17541(a)(2)(A) in reaching its decision; instead, the BOP considered Krueger's educational accomplishments, vocational skills, participation in skills development programs, and the like as a part of his general consideration for RRC placement. (*See* Doc. 21 at 4.) Furthermore, the BOP contends that it need not create an incentive of a 12-month placement in an RRC facility because the language of § 17541 is discretionary and does not override its otherwise broad discretion in making placement decisions.

The court agrees that the language § 17541 vests discretion with the BOP concerning the *type* of incentives to award. *See* 42 U.S.C. § 17541(a)(2)(A). However, the language clearly requires the *establishment* of an incentive program rewarding a prisoner's participation in skills development programs. *See id.* § 17541(a)(1)(G). Moreover, the fact that Congress specifically suggested one such incentive may be "the maximum allowable period in a community confinement facility" is illustrative of the types of incentives the BOP should consider. It appears, however, based on the information before the court in this case, that the BOP has not yet established an incentive program. On October 16, 2008, Krueger sent a request for an Informal Resolution seeking information concerning the BOP's incentive program so that he could make a formal request for consideration under §

17541.  (Doc. 5 at 37, Pet'r's Ex. L.)  On October 30, 2008, the BOP answered Krueger's request by stating:

> In regards to the additional incentives for participating in skills development programs, there hasn't been any additional guidance put out from the BOP at this time stemming from the Second Chance Act.  As such, your request for info on our incentives is denied at this time.

(*Id.*)  Krueger followed this informal request with a Request for Administrative Remedy on October 31, 2008, again asking for information concerning the BOP's incentive program.  On November 19, 2008, Krueger received a reply from Respondent, which stated, in relevant part:

> This is in response to your Request for Administrative Remedy in which you request incentives for your participation in skills development programs as referenced in the Second Chance Act recently enacted into law.  You are to be commended for your achievements during incarceration and these accomplishments will be considered when your Unit Team is determining the length of halfway house in your case. [sic] However, at this time, there have been no incentives put forth by the Director of the Bureau of Prisons for participation in programming other than consideration for the maximum period of twelve months in a Residential Re-Entry program.

(Doc. 5 at 39, Pet'r's Ex. M.)  Krueger continued to appeal up the BOP's administrative ladder until he received a response on March 17, 2009 from Harrell Watts, Administrator of National Inmate Appeals.  Mr. Watts stated that Krueger's "programming accomplishments constitute part of the 'characteristics of the prisoner,' and will be weighed accordingly" along with the other factors listed in 18 U.S.C. § 3621(b).  (Doc. 5 at 42, Pet'r's Ex. O.)

        The various responses received by Krueger inconsistently assert that either no incentive program exits, that one does exist and that there is an incentive of a full 12-month placement in an RRC facility, or that Krueger's accomplishments

13

are merely part of the § 3621(b) factors considered for all inmates. Thus, it is unclear whether the BOP has implemented, or is in the process of implementing, an incentive program. Whatever the case may be, it is clear to this court that Congress intended that the BOP create incentives for a prisoner's participation in skills development program, *see* 42 U.S.C. § 17541(a)(1)(G), and that one of those incentives may be a 12-month placement in an RRC facility. *See id.* § 17541(a)(2)(A). Moreover, this consideration of incentives was clearly intended to be separate and distinct from the consideration under 18 U.S.C. § 3624(c) otherwise it would have been superfluous for Congress to have created an entirely distinct statutory framework. Because it is unclear whether the BOP ever separately considered a full RRC placement as an incentive under § 17541(a)(1)(G) for Krueger's skills development and educational achievements, the court will order Respondent to consider Krueger, in good faith, for a full 12-month RRC placement as an incentive under § 17541 separately from its determination under 18 U.S.C. § 3624(c).

### D.     Petitioner's Motion for Limited, Expedited Discovery

Accompanying his petition for writ of habeas corpus, Petitioner filed a motion for limited, expedited discovery. (Doc. 12.) The gist of Petitioner's motion is that he needs additional information from Respondent concerning whether the April 14, 2008 and November 14, 2008 memoranda improperly constrain BOP staff in recommending RRC placements greater than 6 months. Because the court will grant Petitioner's writ directing the BOP to reconsider the duration of his RRC placement *without* consideration of the limitations imposed by the April and

14

November memoranda, the court will deny Petitioner's motion for expedited discovery as moot.

**IV.** <u>**Conclusion**</u>

In accordance with the foregoing, the court will grant Petitioner's petition for writ of habeas corpus (Doc. 1) and direct the BOP to: (1) reconsider the length of Petitioner's RRC placement in accordance with the Second Chance Act without regard to the limitations imposed by the April 14, 2008 and November 14, 2008 memoranda; and (2) consider separately and in good faith whether Petitioner should be awarded a 12-month RRC placement as an incentive for his participation in the BOP's skills development program. An appropriate order will follow.

s/Sylvia H. Rambo<br>United States District Judge

Dated: September 3, 2009.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

**JOHN BRYON KRUEGER,** :
:
    Petitioner : 1:09-CV-1116
:
v. :
:
**WARDEN JERRY MARTINEZ,** : Hon. Sylvia H. Rambo
:
    Respondent :
:

# O R D E R

In accordance with the attached memorandum of law, **IT IS HEREBY ORDERED THAT:**

(1) Petitioner's Petition for Writ of Habeas Corpus, (Doc. 1), is **GRANTED** and Respondents are directed to:

    (a) reconsider the length of Petitioner's RRC placement in accordance with the Second Chance Act without regard to the limitations imposed by the April 14, 2008 and November 14, 2008 memoranda;

    (b) consider separately and in good faith whether Petitioner should be awarded a 12-month RRC placement as an incentive for his participation in the BOP's skills development program;

    (c) report back to the court within 45 days from the date of this order the results of its reconsideration of the length of Petitioner's RRC placement.

(2) Petitioner's Motion for Limited, Expedited Discovery from Respondent, (Doc. 12), is **DENIED AS MOOT.**

                                                                 s/Sylvia H. Rambo
                                                                 United States District Judge

Dated: September 3, 2009.